EDWARD G. LORING, Judge of Probate, *vs.* THEOPHILUS P KENDALL, Administrator, & others.

A petition to the district court of the United States for the District of Massachusetts, for the benefit of the Bankrupt Act of 1841, in which there was no other averment of the petitioner's residence, than his description of himself as "of Boston, in the county of Suffolk, and State of Massachusetts;" and which did not expressly allege that he owed debts not created while acting in a fiduciary capacity; but which referred to an annexed schedule of his debts, containing debts not fiduciary in their character; and was in the form prescribed by the district court, under the power conferred upon it by the sixth section of the Bankrupt Act; was sufficient to give that court jurisdiction of the case.

For the failure of an administrator to account within one year, no action lies on his probate bond, after the allowance by the judge of probate, at the request of all parties in interest, of an account subsequently rendered by him.

A probate bond is not provable in bankruptcy against one of the sureties before a breach of of condition of the bond; nor, *it seems,* before judgment in an action brought for such breach.

ACTION OF CONTRACT, brought on the 26th of January 1852, on a probate bond, made on the 28th of May 1838, by the defendant Kendall, administrator *de bonis non* with the will annexed of John Whitney, as principal, and by the other de-fendants as his sureties, and conditioned, as required by the Rev. Sts. *c.* 63, §§ 2, 8, among other things, to render upon oath a just and true account within one year, and at any other times, when required by the judge of probate. The breaches relied on were failures to account within one year, and when required by the judge of probate in 1851.

The defendants were defaulted; and the parties afterwards

26 *

submitted the case to the court upon the following facts: John Whitney, by his will, proved on the 27th of February 1837, appointed his son John Whitney, Jr. executor and trustee of the same; and devised and bequeathed all his property to him, one third for his own use, and two thirds in trust to pay over the net income in equal shares to his son Thomas and his daughter Catharine (who afterwards married Patrick Phillips) during their lives, and at the death of either " the share so devised to go to his or her heirs or assigns forever; " and gave him discretionary power to apply part of the capital for the benefit of said Thomas and Catharine. By a codicil he directed said trustee to deduct the sum of $400 from the share so devised to him in trust for Catharine, and cause the same to be invested in the name of her son, the interest from time to time to be added to the capital, and the same to be paid over to the said grandson of the testator, on his coming of age.

John Whitney, Jr. gave bond as executor, on the 27th of February 1837; and was subsequently removed, and Kendall appointed administrator *de bonis non* with the will annexed. No special appointment of a trustee was made, except as above stated, and no person ever gave a special bond in that capacity.

On the 1st of March 1841, Kendall rendered to the probate court his first and only account, as such administrator, in which he prayed to be allowed for $400 " taken from the share of Catharine Phillips, and invested agreeably to the will for the use and benefit of her son," and " for balance of this account, to be held in trust for the use and benefit of Catharine Phillips, agreeably to the provisions of the will, $1,229.23." On this account was the following certificate, addressed to the judge of probate, and signed by John Whitney, Jr. Catharine Phillips and Patrick Phillips: " The undersigned, being the only surviving heirs at law of the within named John Whitney, deceased, and, with the administrator of the estate of their brother Thomas Whitney, deceased, the only persons interested in the estate of said John Whitney, deceased, hereby certify that they have examined the within account, and finding the same correct,

request your honor to allow and pass the same without further notice to them:" Also another certificate to the correctness of the account, signed by the defendant Kendall, as administrator of Thomas Whitney This account was allowed by the probate court on the 22d of March 1841.

On the 16th of March 1842, William Lawrence, one of the defendants, presented to the District Court of the United States for the District of Massachusetts the following petition, sworn to by him before a commissioner of said court: " To the Honorable the Judge of the District Court for the District of Massachusetts. Respectfully represents William Lawrence of Boston, in the county of Suffolk, and State of Massachusetts, that he is owing debts in his private right and capacity to sundry creditors, a list of whose names and places of residence, and the amount due to each, according to the best of his knowledge and belief, is contained in the schedule hereunto annexed, marked A, and that the annexed schedule, marked B, contains an accurate inventory of his property, rights and credits of every name, kind and description, and of the location and situation of each and every parcel and portion thereof; that he is unable to meet his debts and engagements, and he therefore applies to this honorable court for the benefit of the act of congress, entitled ' An Act to establish a uniform system of Bankruptcy throughout the United States,' and prays that after due proceedings had, he may be declared by a decree of the court to be a bankrupt, within the purview of the said act, and upon his compliance with all the requisitions of the said act, and all the orders and directions of the court in the premises, that he may be decreed to have a certificate of discharge from all his debts provable under the said act, and otherwise entitled to all the benefits thereof." This petition is in the form prescribed in the " rules, regulations and forms," ordained and established by said court, in performance of the duty imposed upon the district courts of the United States by the sixth section of the Bankrupt Act. Schedule A, annexed to the petition, includes a large amount of debts, not contracted by Lawrence in any fiduciary capacity. The petition, after due notice, was allowed, Law-

rence was declared a bankrupt, and on the 18th of October 1842, received his discharge from all debts owing by him on the 16th of March preceding, the time of the presentation of his petition.

The assessor, to whom the case was referred to determine the amount for which execution should issue, charged the defendants with the items of $400 and $1,229.23 for which Kendall prayed to be allowed in his account, and also with $600, for the income of a house purchased with the funds of the estate, amounting in the aggregate to $2,229.23; and credited them with sundry payments, amounting to $1,779.18; leaving a balance of $450.05, to which the assessor added interest to October 15th 1852, the date of his report, amounting to $978.58; and reported that execution should issue for $1,428.63 and costs. The defendants agreed that execution should issue accordingly against all of them, unless the court should be of opinion that Lawrence had been discharged from such liability by said proceedings in bankruptcy, which the parties agreed should have the same effect, as if they had been seasonably pleaded.

*C. B. Goodrich & G. S. Hale,* for the plaintiff. 1. The petition in bankruptcy of the defendant Lawrence does not aver that the defendant resided in the State or District of Massachusetts; nor that he owed debts, not created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity. His discharge is therefore void; for such averments are essential to give jurisdiction. U. S. St. 1841, Sess. 1, *c.* 9, § 1, 5 U. S. Sts. at Large, 441. Owen on Bankruptcy, Appx. 25. *Johnson* v. *Ball,* 15 N. H. 407. Stating the petitioner to be " of Boston " is not a sufficient averment of residence. *Bingham* v. *Cabot,* 3 Dall. 382. *Abercrombie* v. *Dupuis,* 1 Cranch, 343. *Wood* v. *Wagnon,* 2 Cranch, 9. It must appear from the petition and record that the court had jurisdiction. *Cox* v. *Austin,* Suffolk, March term 1853. *Parker* v. *Phillips,* 2 Cush. 180. *People* v. *Bancker,* 1 Seld. 106. *Castellanos* v. *Jones,* 1 Seld. 164. *Thatcher* v. *Powell,* 6 Wheat. 127. It is like a plea of a discharge in bankruptcy; which must allege every thing requisite to the jurisdiction, especially the facts not here alleged. *Sackett*

v. *Andross*, 5 Hill, 327. *Seaman* v. *Stoughton*, 3 Barb. Ch. 348 *Coates* v. *Simmons*, 4 Barb. 406.

2. The debt in suit was created in consequence of a defalcation, as administrator, and therefore Lawrence is not protected by his discharge. The surety owes the same debt as the principal; and all the obligors are principals, as to the obligee, until the surety's liability is varied by some act of the obligee, done with a knowledge of the relation of principal and surety existing between the obligors.

3. The damages now sought to be recovered, being damages assessed for the defalcation of Kendall, by not accounting when cited in 1851, which was subsequent to the discharge in bankruptcy of Lawrence, were not provable in bankruptcy, either as a debt, or as a contingent and uncertain demand, under § 5 of the Bankrupt Act. *Dyer* v. *Cleaveland*, 18 Verm. 241. *Mann* v. *Houghton*, 7 Cush. 592. *Sleeper* v. *Miller*, 7 Cush. 594, *note.* *Perkins* v. *Kempland*, 2 W. Bl. 1106. *Murray* v. *De Rottenham*, 6 Johns. Ch. 63. *Woodard* v. *Herbert*, 24 Maine, 358. *Stinemets* v. *Ainslie*, 4 Denio, 573. *Prentiss* v. *Kingsley*, 10 Barr, 120. *Bennett* v. *Bartlett*, 6 Cush. 225. *Roosevelt* v. *Mark*, 6 Johns. Ch. 285. *Ex parte Marshall*, 1 Mont. & Ayrt. 118, 145, 731, and 3 Dea. & Chit. 120. *Ex parte Thompson*, 1 Mont. & Bligh, 219, and 2 Dea. & Chit. 126. *Ex parte Lancaster Canal*, Mont. 27. *South Staffordshire Railway* v. *Burnside*, 5 Exchequer Reports, 129, and 2 Eng. Law & Eq. R. 418. *Hankin* v *Bennett*, 8 Exchequer Reports, 107, and 14 Eng. Law & Eq. R. 403. *Amott* v. *Holden*, 16 Eng. Law & Eq. R. 142. *Lyde* v. *Mynn*, 1 Myl. & K. 683, and 4 Sim. 505. *Boorman* v. *Nash*, 9 B. & C. 145. *Yallop* v. *Ebers*, 1 B. & Ad. 698. *Clements* v. *Langley*, 5 B. & Ad. 372. *Ex parte Barker*, 9 Ves. 110. *Ex parte Simpson*, 1 Mont. & Ayrt. 541. *Johnson* v. *Compton*, 4 Sim. 37.

The custody of the money belonging to the estate, created no debt, until the court of probate should direct a change in the custody. A breach of a probate bond cannot exist until judicially ascertained by the judge of probate, and no right of action or of proof can arise until such adjudication, nor until some actual

damage to the parties in interest. Rev. Sts. *c.* 67, §§ 7–9; *c.* 70, §§ 2, 6, 10–12. *Dawes* v. *Boylston*, 9 Mass. 357, 358. *Robbins* v. *Hayward*, 16 Mass. 524. *Coffin* v. *Jones*, 5 Pick. 61. *Barton* v. *White*, 21 Pick. 58. *Paine* v. *Stone*, 10 Pick. 75. *Dawes* v. *Head*, 3 Pick. 128. *Paine* v. *Fox*, 16 Mass. 129. *Walker* v *Hall*, 1 Pick. 20. *Dawes* v. *Bell*, 4 Mass. 106. *Ex parte Crosse*, 2 Mont. Dea. & De Gex, 308. The neglect to return an account within a year, if a breach, gave no right of action or of proof, until the judge of probate directed the fund in the administrator's hands to be paid over by him, or permitted a suit on the bond. See *same cases*, and *Newcomb* v. *Williams*, 9 Met. 536, and *Ex parte Marks*, 3 Mont. & Ayrt. 521. Besides; such breach, if any, was waived by the subsequent return of an account, approved and accepted by the court and the parties in interest. *Paine* v. *Moffit*, 11 Pick. 499. *Hogins* v. *Arnold*, 15 Pick. 263. *Bond* v. *Cutler*, 10 Mass. 419. *Gage* v. *Gannett*, 11 Mass. 217. The bond is a continuing security; and new breaches give new causes of action, which were not provable under the proceedings in bankruptcy. *Taylor* v. *Young*, 3 B. & Ald. 521. *Ex parte Granger*, 10 Ves. 351. *Amott* v. *Holden*, 16 Eng. Law & Eq. R. 142. *Austin* v. *Moore*, 7 Met. 116. *Shute* v. *Taylor*, 5 Met. 67. *Overseers of St. Martins* v. *Warren*, 1 B. & Ald. 491. *Millen* v. *Whittenbury*, 1 Campb. 428. *Waldo* v. *Fobes*, 1 Mass. 10. *Watkins* v. *Flannagan*, 8 Moore, 480. *Mills* v. *Auriol*, 1 H. Bl. 433. *Alsop* v. *Prince*, 1 Doug. 163, 166, & *notes*.

*S. Bartlett & G. W. Minns*, for the defendant Lawrence. 1. The petition is in the form prescribed by the district court, under the power conferred upon it by § 6 of the Bankrupt Act, and is therefore sufficient. And see *Morse* v. *Cloyes*, 11 Barb. 100; *King* v. *Dietz*, 12 Penn. State Rep. 156; *Holbrook* v. *Jackson*, 7 Cush. 145.

2. The bond sued upon was broken at the expiration of a year from its date, by the failure of the administrator to render an account within the year. The claim against Lawrence on this bond might have been proved against him under the proceedings in bankruptcy, subsequently commenced, and his certificate protects him from this action. *Jemison* v. *Blowers*, 5 Barb. 686.

*Hatten* v. *Speyer*, 1 Johns. 37. *Boyd* v. *Vanderkemp*, 1 Barb Ch. 289. *Dyer* v. *Cleaveland*, 18 Verm. 245. *United States* v. *Davis*, 3 McLean, 484, 485. *Dusar* v. *Murgatroyd*, 1 Wash. C. C. 16, & notes. *Utterson* v. *Vernon*, 3 T. R. 359. *Clinton* v. *Hart*, 1 Johns. 375. *Mace* v. *Wells*, 7 How. 272. *Fulwood* v. *Bushfield*, 14 Penn. State Rep. 90. *Woodard* v. *Herbert*, 24 Maine, 358.

By John Whitney's will, John Whitney, Jr. was appointed trustee, as well as executor. He gave bonds as executor, and none as trustee; and was removed from the office of executor, but not from that of trustee; and Kendall was appointed administrator in his place, but not trustee. Kendall did not succeed Whitney as trustee, and had nothing to do with the real estate, if indeed he had with any part of the trust property. *Tainter* v. *Clark*, 13 Met. 220. *Clark* v. *Tainter*, 7 Cush. 567. On stating his final account in 1841, there appeared to be in his hands $1,229.23, belonging to Catharine Phillips, and $400, belonging to her son; and these sums he was bound to pay over to an existing trustee. *Hall* v. *Cushing*, 9 Pick. 395. *Dorr* v. *Wainwright*, 13 Pick. 328. [Thomas, J. Is the administrator bound to have a trustee appointed? Shaw, C. J. Is he responsible for not paying over the money, until a trustee is appointed?] The debt being ascertained and defined, the fact that the probate court have not ordered it to be paid, or that no demand has been made for payment, cannot prevent the discharge in bankruptcy from taking effect.

Shaw, C. J. The only question now brought before the court, the same having been reserved by consent, notwithstanding the 'efault, is, whether William Lawrence, one of the sureties on the bond in suit, is liable, or whether he has a good defence in ₂ certificate of discharge under the Bankrupt Law of the United States of 1841. Some objections are taken to this discharge for want of jurisdiction of the court by which it was granted.

It is contended, that it must appear that the bankrupt resides in the district where he applies, and that it should be distinctly averred in the petition, that he resides in the District of Massachusetts. Here he is described as " William Lawrence, of Bos

ton, in the county of Suffolk and State of Massachusetts;" and we may judicially take notice, that this is within the District of Massachusetts. Besides; the act itself, § 6, gives the district court in each district authority to prescribe suitable rules, regulations and forms of proceeding; and in executing this duty, the court is enjoined to make them as simple and brief as practicable It is found that this petition was in the form prescribed by the court for this district. This objection is overruled.

Another exception is, that the petitioner did not state that he owed debts, not created in consequence of defalcation as a public officer, or as executor, administrator, guardian or trustee, or acting in other fiduciary capacity; and therefore that there was not enough stated in the petition to bring the case within the statute, and give the district court jurisdiction. But we think this objection cannot prevail. Again alluding to the authority above cited, respecting rules, regulations and forms, and requiring them to be brief, and to the fact that this petition pursued the prescribed form, we may add, that by the petition itself, a list of the debts was made part of it, and by the list it appears, that the petitioner did owe a large amount of debts not fiduciary, and so on the whole petition enough was stated to bring the case within the bankrupt law. The bankrupt is bound to show on his schedule the nature of his debts, at least so far as to enable the court to take jurisdiction of them. *Chapman* v. *Forsyth*, 2 How. 209.

We are then to consider whether this certificate is a bar to the debt or demand sued for in this action. The discharge is of all debts due on the 16th of March 1842, and the question is, whether it is a bar to this action on a probate bond of a date prior to such discharge.

A probate bond, under the law of Massachusetts, is a security and obligation, of a peculiar character, given by an officer charged by law with a duty and trust of a various and miscellaneous character, usually given in a round sum, with condition to perform the duties of such trust. This condition, though expressed in few words, from its very generality embraces a great variety of acts, to continue for a series of years, in which a great variety

of persons may have interests, as creditors, legatees, distributees, annuitants, wards, minors, married women and others. It is given to the judge of probate, not in his personal, but in his official capacity, as trustee for all persons beneficially interested, and on his decease, it passes to his successors in office, not to his personal representatives. It is obviously, therefore, a continuing obligation, of which there may be various and successive breaches. When put in suit, it must be in the name of the judge of probate, one judgment is rendered for the entire penalty, and execution may be awarded according to circumstances, and upon particular breaches averred and proved, in favor of certain individuals, as judgment creditors, creditors whose debts have been allowed under a commission of insolvency and payment of a dividend decreed thereon, or distributees whose claims are ascertained by a probate decree of distribution, or in favor of the judge of probate himself, for the general benefit. In case these various awards of execution do not exhaust the whole penalty, the judgment for the residue stands as a security for any other breach, which may at any time afterwards occur, to be sued for by a *scire facias*, either for the benefit of a party entitled to claim in his own right, or by the judge of probate, as trustee for others.

We have thus far spoken of the liability created by a probate bond, as it affects both the principal and sureties. The administrator himself may be subject to various suits, by action or *scire facias;* but the only liability of the surety is on the bond, and the only cause of action upon that liability, is the action to be commenced and prosecuted in the name of the judge of probate. In order, therefore, to see whether Lawrence, the bankrupt, was discharged by his certificate, from his obligation as surety on this probate bond, we must see whether there was any debt or claim which might have been proved, under the commission of bankruptcy, against him.

An administrator with the will annexed is to give a like bond with an executor; and the executor is to give bond, amongst other things, to render an account within one year. Rev. Sts. c. 63, § 8, and § 2, cl. 3. And in this case, the facts show that

no account was rendered by the administrator within one year and so, it is contended, there was a breach of the bond. If it were so, it might be answered, that such a breach would be merely formal, would furnish a claim for nominal damages only, and so would not be a debt provable against a surety in bankruptcy.

But we think there is, upon the facts, a better answer, which is, that such breach was waived before any claim against the bankrupt's estate could be made. The bond was given May 28th 1838, and the year expired May 28th 1839. The first and only account rendered by the administrator is dated March 1st 1841, and the account was allowed and passed at a probate court, on the 22d of March 1841. The actual allowance of this account, without exception, especially upon the certificate of its correctness, and a request for its allowance, by the parties in interest, was a waiver of the prior breach in not rendering an account within a year, and the judge of probate, or other person suing in his name, in a suit on the bond commenced after such waiver, could not have assigned such failure to account within the year, as a breach.

The case then was that of a subsisting, outstanding, unbroken bond, on which the bankrupt stood as surety, conditioned for the performance of duties created by law, by an administrator having the means in his power to perform all those duties; for he could be no further liable than he had assets to meet such liability. It was therefore, in legal effect, a bond conditioned for the fidelity of an officer appointed by law, to discharge plain and well defined duties. Such an existing obligation, we think, can in no just sense be considered a debt, either *in præsenti* or *in futuro.* It may, in case of any future breach, be the foundation of a debt; but any claim arising from it, in the nature of a debt, will arise from the breach, and not from the mere existence of the obligation.

Nor can this come under the head of contingent claims, as expressed in the fifth section of the Bankrupt Act. This applies to the case of debts *in præsenti,* and which will become payable by lapse of time only; and if it applies to contingent debts,

such as those of indorsers, sureties, bail, &c. it means that when their debts become absolute, such creditors shall have a right to prove, and have them allowed. This manifestly applies to all that class of contingent liabilities, where a possible or contingent liability exists at the time of the filing of the petition, and where such contingency happens, and the contingent liability becomes an absolute debt, as where an indorser or surety pays the debt of his principal, and thereby becomes his creditor, in season to enable such creditor to prove his debt, or before the time for offering proof has passed, and the settlement of the estate been closed, and the funds distributed. The case presupposes that payment by the surety has been made, and so the debt become absolute.

The effect of the discharge is expressed more than once in the act, with some slight difference in the language used. The provision in § 4 is, that " every bankrupt who shall surrender all his property," &c. " shall be entitled to a full discharge from all his debts." In another part of the same section it is declared, that " such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are provable under this act." Here, although the phraseology slightly varies, the effect is the same. It is true that the terms " contracts and engagements " are used, yet they are contracts and engagements provable, and therefore contracts and engagements upon which there is some debt, payable presently or hereafter, or some claim or demand for money, upon which the holder can come into competition with other creditors, and justly claim, *pari passu* with them, an equal distribution of the effects of a common debtor. Taken therefore in connection with the other provisions, and the general purposes and tenor of the act, the discharge cannot extend to contracts upon which no claim can be now founded, and in regard to which there is no reason to presume that any demand for money will ever exist.

The actual breach, upon which the condition of this bond afterwards became forfeited, took place ten years after, when the administrator, upon being cited, failed to appear and render

an account; and thereupon a cause of action accrued. To this, the court are of opinion, that the defendant Lawrence's discharge in bankruptcy in 1842 is no bar.

Thus far we have treated a probate bond as if it were a common law security, held by the judge of probate, which in case of a breach of condition he might have an action upon, or prove in a proceeding under the jurisdiction of the United States courts. But we have very great doubts whether it could ever be so treated or used, in case there had been a clear, actual breach of the condition, and money due from the principal and sureties, whilst the bankrupt proceedings against the surety were open and in progress, but no judgment of forfeiture on the bond. We have already said that a probate bond is an obligation of a peculiar character. We may add, it is not only provided for by the statute, but its legal effect, the mode in which it is to be used and prosecuted, the rights of parties to be secured by it, are all regulated by the statute. It is filed in the probate office for the benefit of all persons interested; suits may be brought upon it by certain creditors and distributees, whose claims have been liquidated and ascertained by judicial decision, without application to the judge of probate. Rev. Sts. *c.* 70, §§ 3–6. In all other cases, application is to be made by a party interested, to the judge of probate, for leave to sue the bond; if granted, such applicant indorses the writ, and becomes personally liable for costs, if he fail in the suit. The suit must be brought originally in the supreme judicial court, and in the same county, in the probate court of which the bond is taken. Either, then, the bond before suit, or the judgment for the penalty rendered afterwards, stands open and accessible to all persons, for whose benefit the law directs it to be taken, and for whom it is to stand as a security. Each of such parties may have a writ of *scire facias* in his own name, to recover part of said penal sum to his own use. Such a bond, therefore, has very few of the characteristics of a writing obligatory at common law, either as to parties, legal operation, or remedies, the objects to be obtained, or the mode of obtaining them.

After judgment in the tribunal, which alone has jurisdiction

of a probate bond, when the liability, both of principal and sure·
ties, is ascertained and fixed by a judgment for the penalty; and
certain individuals in their own right, or the judge of probate,
as trustee for others, have acquired a right to claim particular
amounts; we are not prepared to say that such claims migh⁺
not, in case of the bankruptcy of the surety, or even of the prin··
cipal, be laid before the commissioners, and proved; the evi-
dence, in such case, being the judgment in a court of competent
and exclusive jurisdiction, and the awards of execution· un-
der it. But until a judgment on the probate bond, there appear
to be strong reasons why such a bond cannot be deemed a debt,
which could be proved, and if so, the liability of the surety, for
this reason also, is not barred by his certificate of discharge in
bankruptcy.