SIGEL, The FRANZ. See Case No. 5,062.

SIGEL, The GENERAL FRANZ. See Case No. 5,311.

SIGER (CHAPIN v.). See Case No. 2,600.

SIGNAIGO (GAFFNEY'S ASSIGNEE v.). See Case No. 5,169.

## Case No. 12,849.

### SIGSBY v. WILLIS.

[3 Ben. 371;[1] 3 N. B. R. 207 (Quarto, 51); 1 Am. Law T. R. Bankr. 171; 2 Am. Law T. 169.]

District Court, N. D. New York. Aug., 1869.

BANKRUPTCY — EQUITABLE DEBT — PARTNERSHIP TRANSACTIONS—MISAPPROPRIATION OF PARTNERSHIP FUNDS.

1. The "debt provable under the act" [of 1867 (14 Stat. 517)], which a creditor must have as a foundation for a petition in involuntary bankruptcy, may be an equitable demand.

2. If the nature of the debt is set forth in the petition, which avers that the debt is provable under the act, the question whether it is so

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

provable is to be determined as a question of law and not of fact.

3. Where a petition in involuntary bankruptcy averred that the petitioner and the alleged bankrupt had been partners; that the partnership had been dissolved, but no settlement had been made between them, and that the alleged bankrupt was indebted to the petitioner "by reason of such partnership transactions for assets and money of said copartnership," which had come into his hands above his share: *Held*, that the allegation was insufficient, and that the petitioner was not entitled to an adjudication upon the facts stated.

4. A member of a firm which has been dissolved, is not entitled to an adjudication of bankruptcy against his copartner on the ground that he can prove a debt against him in respect to bonds and mortgages given by them jointly, under the 19th section of the bankruptcy act.

5. Nor can he have such an adjudication on the ground of his having a contingent debt against his copartner.

[Cited in Hester v. Baldwin, Case No. 6,438; Re Stansell, Id. 13,293.]

6. But, if one partner fraudulently misappropriates the partnership funds, the other partner may treat the misappropriation as foreign to the copartnership, and prove the claim as a debt, precisely as though no partnership had existed.

[This was a proceeding by William P. Sigsby against Alexander E. Willis.]

M. Hale, for petitioner.

Geo. Gorham, for respondent.

HALL, District Judge. The petition in this case alleges that the petitioner and the alleged bankrupt were partners in business for some time previous to April 3d, 1869, and that on that day their copartnership was dissolved; that no settlement has been made between them, but that the alleged bankrupt is indebted to the petitioner "by reason of such partnership transaction for assets and money of said copartnership which have come into the hands of said Alexander E. Willis over and above his share thereof, and otherwise, in the sum of about seven thousand dollars;"—and this is the alleged indebtedness upon which the petition is based.

On the return of the order to show cause, it was insisted that a debt of the character of that thus set forth would not support a petition in bankruptcy against the debtor; there being no legal debt for which an action could be maintained at law, but only a right to compel an account in a court of equity.

Under the earliest English bankrupt acts, this objection would have been fatal. Under these acts it was held that debts recoverable in a court of equity only, would not support a commission in bankruptcy, even though provable for the purposes of a dividend; and that one partner could not petition against another partner in respect to any indebtedness arising out of the transactions of the copartnership, unless the debt was such that he might maintain an action at law. 1 Christ. Bankr. 2352–2356, notes, and 2 Christ. Bankr. 475; Ex parte Nokes, 2 Mont. Bankr. 148; Ex parte Hylliard, 1 Atk. 147, 2 Ves. Sr. 407; Medli-

cot's Case, Strange, 899; Ex parte Lee, 1 P. Wms. 783; Murphy's Case, 1 Schoales & L. 44; Jeffs v. Wood, 2 P. Wms. 128; Eden, Bankr. Law, 42, 43; Marson v. Barber, Gow, 17; Henley, Bankr. Law, 42, 43; Sutton's Case, 11 Ves. 163; Broadhurst's Case, 19 Eng. Law & Eq. 466; Windham v. Paterson, 1 Starkie, 145.

The English courts have, however, repeatedly held that an equitable debt might be proved under a commission obtained by another creditor, although such debt would not support a commission (James, Bankr. Law, 87; Ex parte Yonge, 3 Ves. & B. 31; Jeffs v. Wood, 2 P. Wms. 128; Murphy's Case, 1 Schoales & L. 44; 2 Christ. Bankr. 473, 474); and also, that a solvent partner, winding up the partnership concern, was entitled to prove, under the commission against bankrupt partners, the share of the loss which each partner ought to have borne, as a debt against his separate estate (Ex parte Watson, 4 Madd. 477). And the same rule would appear to be established in this country under the bankruptcy act of 1841. Butcher v. Forman, 6 Hill, 583. In the case last mentioned, the English authorities which support the position that solvent partners of the bankrupt, having paid all the joint debts of the firm, are regarded as standing in the light of sureties, or persons liable for him, and therefore entitled to come in and prove in respect to the bankrupt's share of the copartnership debts (Eden, Bankr. Law, 177; Ex parte Yonge, 3 Ves. & B. 31; Afialo v. Fourdrinier, 6 Bing. 306), were approved, and the discharge was said to be a good bar to an action for contribution, when the debt of the firm was paid by the solvent partner after the bankrupt's discharge.

These decisions of the English courts were made under English statutes which are probably different, in some material respects, from our present bankrupt act, in regard to the persons who may become petitioning creditors. Under our present statute, it is only necessary that the petitioning creditor should have a "debt provable under the act," to the required amount, and the question to be determined is, whether the debt set forth in the creditor's petition is so provable.

It is averred in the petition that the debt of the petitioner is so provable, but the nature of the petitioner's demand being stated in the manner above set forth, the question to be determined is one of law, and not of fact merely; and the court is therefore called upon to determine whether such a debt is provable under our present bankrupt act.

The petition concedes that the indebtedness grew out of the copartnership transactions, and that no settlement has been made between the parties. It does not allege that all the copartnership debts have been paid, or that all the copartnership property has been disposed of; and, as it alleges the indebtedness to be in part for assets of the copartnership, which have come into the hands of the alleged bankrupt,

without alleging that they have been disposed of, there is ground for the inference that such assets are still in the hands of the alleged bankrupt. If so, they are liable to the payment of the copartnership debts; and, by a proceeding in equity for an account, and also for a receiver and an injunction, this property may be secured for the payment of joint creditors, in which case, the alleged bankrupt could not be properly charged therewith; nor, in case he should be adjudged a bankrupt, could such assets, if still the property of the copartnership, be charged to him, as between him and his former partner, so as to become the property of the bankrupt, and thus swell his separate estate, out of which his individual or separate creditors would be paid, to the prejudice of the creditors of the copartnership.

Considering these statements of the petition in the light of the English decisions, and also the omission of such allegation as would make the petitioner's debt provable against the separate estate of the alleged bankrupt, under the rules which govern the administration of copartnership and separate estates, in bankruptcy, I am strongly inclined to think that this allegation of the petition is insufficient, and that the petitioner is not entitled to an adjudication upon the facts alleged in his petition. And, in respect to this allegation of indebtedness, the amended petition, heretofore filed, is, in substance, like the original petition, and gives to the petitioner no stronger case against the alleged debtor.

The petitioner has asked leave to file a supplemental or second amended petition, for the purpose of amplifying and making more particular the statements of the nature of the petitioner's demand against the alleged bankrupt, and this proposed amended petition, which is duly verified, sets out that the petitioner and the alleged bankrupt entered into copartnership about the first day of February, 1867, in the milling and flouring business, and that, at the time of forming such copartnership, the petitioner purchased of said Willis one half of a certain real estate, mill and water privilege, &c., and received a conveyance thereof, and paid said Willis ten thousand dollars therefor; that about the first day of April, 1867, the petitioner and Willis executed and delivered to one Wessel T. B. Van Orden a mortgage upon said real estate to secure the payment of $7,000 and interest, which was due from their said copartnership to said Van Orden, and on which the sum of $7,000 and interest from the 1st day of April, 1869, is still due; that on the 28th of December, 1868, Willis, without the knowledge of the petitioner, executed and delivered to Noble H. Johnson, a mortgage upon said Willis's undivided interest in the premises, for securing the sum of $4,000, being for the individual debt of said Willis; that on or before the 1st day of December, 1868, their said firm became indebted and embarrassed, and effected a compromise with their creditors, by which their creditors agreed to take fifty cents on the dollar of their demands, which said Johnson agreed to pay to such creditors, and that thereupon the petitioner and Willis, to indemnify said Johnson against his said liability, turned over and delivered to him certain accounts and other personal property worth about $5,000, and also, on the 30th of March, 1869, executed and delivered to him their bond and a mortgage upon said real estate, to secure the payment of $3,700; that the said firm now owes no debts, except said seven thousand dollars and interest to said Van Orden, and the said indebtedness to said Johnson, which will not exceed the sum of $6,000; that one-half of said indebtedness of $13,000 belongs to Willis to pay, but that the petitioner is legally liable to pay the whole amount that may become due on the mortgage to Van Orden, and said $3,700 to said Johnson upon the bonds given by him as aforesaid; that by reason of said $7,000 given by Willis to said Johnson, and the insolvency of Willis, the petitioner is in danger of being compelled to pay all that may be due on the said $3,700 mortgage to Johnson, &c.

This supplemental or amended petition further states "that without reference to said liability of your petitioner for said Willis's share of said partnership debts, said Willis is indebted to your petitioner in a sum not less than $7,000; that the said Willis had entire charge of the books of said firm, and kept the same falsely and fraudulently; that your petitioner has discovered since the dissolution of said partnership that said Willis, at various times during said partnership, drew funds from the Coxsackie Bank belonging to the said firm amounting to upwards of $8,000, and from the Catskill Bank, funds belonging to the said firm amounting to $7,546, no part of which sums was charged to said Willis, or appeared at all upon the books of said firm, but which sums were, as your petitioner believes, fraudulently appropriated to his own use by said Willis."

It was insisted upon the argument, that the petitioner was entitled to prove a debt against the alleged bankrupt in respect to the bonds and mortgages given by him and the petitioner jointly, under the provisions of the 19th section of the bankruptcy act, which provides in substance that "any person liable as bail, surety, guarantor, or otherwise for the bankrupt, * * * and who has not paid the whole of said debt, but is still liable for the same or any part thereof, may, if the creditor shall fail or omit to prove such debt, prove the same, either in the name of the creditor or otherwise, as may be provided by the rules, and subject to such regulations and limitations as may be established by such rules;" but, as no such

rules have been established, and as this provision may not, in any event, be deemed to authorize the party so liable to petition against the debtor (as it ought, probably, to be held to authorize proof by the party so liable only in a case where the real creditor could prove, and as the creditor could not prove in this case, because he has security upon the property of his debtor), I am of the opinion that this provision of the statute does not aid the petitioner.

Nor do I think that the petitioner can sustain his position, on the ground that he has a contingent debt or a contingent liability against Willis. It can hardly be supposed that it was intended that a petition against a debtor should be maintained upon the allegation that upon a certain contingency, which might never happen, the party proceeded against would become a debtor. The provision that authorizes an application to the court to have the present value of the debt or liability ascertained, only authorizes proof for the amount so ascertained; and it is, to say the least, very doubtful whether, in a case like the present, there is any provable debt within the meaning of the statute, until the amount is so ascertained. I should not, therefore, be inclined to maintain the petition on either of these grounds.

The other allegations of the proposed supplemental or second amended petition, remain to be considered. They are not sufficietly full and precise: as it is desirable, if not necessary, that, in such a petition, the precise amounts, and the time of each fraudulent withdrawal and fraudulent misappropriation of copartnership funds, without any entry on the books of the firm, should be specifically alleged, so that a distinct and defined issue can be presented by the respondent's answer; and it should be so drawn, and the original petition be so amended, as not to concede that an indebtedness caused by such fraudulent misappropriation arose out of the copartnership transactions. This proposed amendment will, therefore, be considered as an affidavit in support of a motion for leave to file proper amendments, setting forth particularly, and in due form, the facts stated generally in the petition; and, in that view, the question whether such an amendment would present a debtor or demand on which a petition can be maintained, will be considered.

The fraudulent misappropriation of the copartnership funds, which is charged against Willis, was, of course, wholly unauthorized by the contract of copartnership, and is of the nature of an unrighteous embezzlement of the petitioner's share of such funds; and both common sense and high judicial authority would justify the proof of the amount of the interest of the other parties in such funds, misappropriated by such embezzlement, against the separate estate of the wrongdoer, as having no connection with the general result of all their copartnership business, and as not arising out of their copartnership transactions. Ex parte Yonge. 3 Ves. & B. 31, and cases there cited. The partner thus wronged by such dishonest and fraudulent acts of his copartner, is entitled to treat the misappropriation as entirely foreign to the copartnership business, and to prove the debt precisely as though the copartnership had not existed, for in no just sense can a debt created by such fraudulent misappropriation of copartnership funds be considered as arising out of the partnership transactions. Leave to file proper amendments to his petition is, therefore, given to the petitioner. upon the payment of $25 costs, &c.. to the respondent, such payment to be made, and the amended petition to be filed, and a copy to be served on the attorney of the respondent within fifteen days from the entry of the order.