## JACOB EBERHARDT *vs.* B. G. WOOD.

## October Term, 1875.

BANKRUPTCY—CONTRIBUTION BETWEEN SURETIES.—The claim of one surety against a co-surety on an administration bond for contribution is provable, and covered by the discharge of the co-surety in bankruptcy, if the liability of the principal had become fixed by judicial proceedings before the petition in bankruptcy, although the amount of the liability was not ascertained nor paid by the surety until several years afterwards.

*Baxter Smith*, for plaintiff.

*T. L. Dodd*, for defendant.

THE CHANCELLOR :—This is a motion by a surety against a co-surety for contribution, the defence relied on being a discharge in bankruptcy under the bankrupt act of congress of 1867.

In the year 1860, Elizabeth Earhart was appointed administratrix of her husband's estate, and gave bond for the faithful discharge of her duties, with the plaintiff and defendant as her sureties. She was afterwards removed as administratrix, and O. F. Noel was appointed administrator *de bonis non* in her place. On the 30th of April, 1861, Noel, as administrator *de bonis non*, filed his bill in this court against Elizabeth Earhart as administratrix, and against the complainant and the defendant as sureties on her administration bond, to hold them liable for a *devastavit* of the assets of the estate. Such proceedings were had that, on the 21st of December, 1870, a decree was rendered in said cause declaring the defendants liable for the personal assets of the estate which came, or might have come, to the hands of the defendant Elizabeth as administratrix, and ordering an account to ascertain the amount with which she was properly chargeable. From this decree an appeal was taken to the supreme court, where it was affirmed, and the account taken. On the 17th of January, 1874, a final decree was rendered by that court in favor of Noel, against all of the defendants, for $1,362.25 and costs. On this decree execution issued, and was levied upon the property

of the plaintiff, Eberhardt, and the property was sold for $1,437.17, the debt, interest, and costs. This motion was made on the 5th of December, 1875.

The defendant, Wood, pleads in bar of this motion his certificate of discharge in bankruptcy, which bears date the 15th of September, 1871, and forever discharges him " from all debts and claims which by said (bankrupt) act are made provable against his estate, and which existed on the 22d day of April, 1871, on which day the petition for adjudication was filed by him, excepting such debts, if any, as are by said act excepted from the operation of a discharge in bankruptcy."

By the 34th section of the bankrupt act of 1867, ch. 176, and, now, by the Revised Statutes of the United States, § 5119, a discharge in bankruptcy duly granted shall, subject to certain limitations not material to be noticed, "release the bankrupt from all debts, claims, liabilities, and demands which were, or might have been, proved against his estate in bankruptcy."

By 1867, 176, 19 (Rev. Stat. U. S. § 5067), " all debts due and payable from the bankrupt at the time of the commencement of proceedings in bankruptcy, and all debts then existing but not payable until a future day, * * * may be proved against the estate of the bankrupt."

By the same section (Rev. Stat. §§ 5068, 5069) it is provided: " If the bankrupt shall be bound as drawer, endorser, surety, bail, or guarantor upon any bill, bond, note, or any other specialty or contract, or for any debt of another person, and his liability shall not have become absolute until after the adjudication of bankruptcy, the creditor may prove the same after such liability shall have become fixed, and before the final dividend shall have been declared. In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends, if the contingency shall happen before the order

for the final dividend; or he may at any time apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained."

If the defendant's "debt or liability" was provable under the proceedings in bankruptcy, the fact that the decree of the 19th of January, 1874, was rendered against him would not affect his right to the benefit of his discharge. For the decree of the chancery court was had, and the appeal therefrom was taken, before the filing of the petition in bankruptcy, and the benefit of the discharge could not be had in the supreme court. *Longley* v. *Swayne*, 4 Heisk. 506, note; *Cornell* v. *Dakin*, 38 N. Y. 253. Strictly speaking, the defendant should have set up the new matter by supplemental and cross-bill in this court, enjoining the proceedings under the appeal until the merits of the defence could be heard. *Hayne* v. *Hayne*, 3 Ch. 19; *Miller* v. *Fenton*, 11 Paige, 18; *Searight* v. *Morrison*, Sup. Ct. Tenn., December term, 1874. But this course was, it seems, not indispensable. The judgment or decree rendered under such circumstances is said to be "null and void." *Riggs* v. *White*, 4 Heisk. 504. And, at any rate, the defendant has his remedy, either at law by quashing the execution, pleading the discharge in bar of any suit upon the decree, or in equity by bill. *Boyd* v. *Vanderkemp*, 1 Barb. Ch. 289; *Johnson* v. *Fitzhugh*, 3 Barb. Ch. 360; *Dick & Co.* v. *Powell*, 2 Swan, 632. The question then is: Was the "debt or liability" on which the present motion is based provable under the proceedings in bankruptcy?

The liability of the plaintiff and defendant, as sureties of Elizabeth Earhart, dates from the execution of the administration bond, and became fixed upon the default of the administratrix. *Craythorne* v. *Swinburne*, 14 Ves. 169; *Boyd* v. *Brooks*, 34 Beav. 7; *Jones* v. *Knox*, 46 Ala. 53; *Wayland* v. *Tucker*, 4 Gratt. 268. The final decree shows that the breach must have occurred previous to the decree

in the court below, and, therefore, before the filing of the petition in bankruptcy. By the decree of the 21st of December, 1870, the recovery to which the complainant was declared to be entitled as against all of the defendants, by reason of the breach of the administration bond, became a present debt, payable when the amount thereof should be liquidated by the master. *Boyd* v. *Vanderkemp*, 1 Barb. Ch. 289. The bankrupt was bound as " surety " upon the " bond," and his liability had " become fixed " by the default of his principal, and the extent of that liability or its " present value " was, as the result shows, susceptible of ascertainment. Beyond all question the debt was provable by the creditor Noel, and the defendant was released therefrom, so far as the creditor was concerned, by the discharge. *Bouie* v. *Rucket*, 7 Humph. 169. The discharge was from the obligation as surety, and the inference is logical that, afterwards, when the plaintiff paid the debt, there was no such relation between him and the defendant as would sustain a claim for contribution, that claim resting solely on the relation of co-suretyship. And so it has been held, and on this very ground. *Tobias* v. *Rogers*, 13 N. Y. 59.

It is argued, however, that although this may be true as to the creditor, yet the plaintiff had no debt or claim against the defendant, as his co-surety, until he paid the decree of the 19th of January, 1874, and could not, therefore, prove against the estate of the bankrupt in 1871. But the obligation had become fixed as a debt before the petition in bankruptcy, and the extent of that liability was ascertainable, and the proportion of such liability which such surety might be compelled to pay was contingent upon the ability of the principal. Every surety has a demand against his principal which is contingent upon his being compelled to pay any part of the debt, and such a demand is provable. *Mace* v. *Wells*, 7 How. 272. Every joint debtor has a demand against his co-debtor, contingent upon his being compelled to pay more than his share of the debt, and such demand is

provable. *Dean* v. *Speakman*, 7 Blackf. 317; *Clark* v. *Porter*, 25 Penn. 141; *Frentress* v. *Markle*, 2 Iowa, 553; *Adkins* v. *Farmington*, 5 H. & N. 586. It seems to follow logically that every surety has a demand against his co-surety, where the liability is fixed, contingent upon his being compelled to pay more than his share of the debt, and that the demand is provable.

It may be added that the equity of a surety against his co-surety, for contribution, grows out of his right to be subrogated to the rights of the creditor so far as it may be necessary to his protection. *Dering* v. *Earl of Winchelsea*, 1 Cox, 318; *Lidderdale* v. *Robinson*, 2 Brock. 160; *Burrows* v. *McWhann*, 1 Desau. 409; *Cuyler* v. *Ensworth*, 6 Paige, 32. And, consequently, the surety is entitled to compel the creditor to prove his debt under the proceedings in bankruptcy, with a view to his right of subrogation on future payment. *Ex parte Rushforth*, 10 Ves. 409; *Matter of Babcock*, 3 Story, 393.

There seems to be no direct adjudication upon the precise point before us under the act of 1867, but the weight of authority under the bankrupt act of 1841 is, perhaps, against the conclusion to which I have come. That act, by its 5th section, authorized all persons having "uncertain or contingent demands" against the bankrupt, including "sureties," to prove their claims. It was doubted whether, under this provision, a principal debtor would be released, by his discharge in bankruptcy, from the claim of a surety on an obligation in existence at the filing of the petition, who had afterwards paid the debt. This doubt was resolved in favor of the bankrupt by the Supreme Court of the United States overruling a decision of the supreme court of Vermont to the contrary, the former court holding the question to be "clear of all doubt." *Mace* v. *Wells*, 7 How. 272. Several of the state courts, and among others our own, had previously reached the same conclusion. *Hardy* v. *Carter*, 8 Humph. 153; *Morse* v. *Hovey*, 1 Sandf. Ch. 187; *Crafts* v. *Mott*, 4 N. Y. 604; *Lipscomb* v. *Grace*, 26 Ark. 231,

The same point as between sureties seems never to have come before the Supreme Court of the United States, but several of the state courts did pass upon it under the act of 1841. The decision of the New York courts was, as we have seen, in favor of the bankrupt. It was held by others that, as between co-sureties, no claim exists until payment by one of them, and, if the payment be not made before final dividend, that there is no claim, contingent or otherwise, which can be proved. *Swain* v. *Barber*, 29 Vt. 292 ; *Dunn* v. *Sparks*, 1 Ind. 397. And, in the case of an official bond, it was held that the debt is not provable if paid after final dividend, although the breach occurred before the petition in bankruptcy. *Dole* v. *Warren*, 32 Me. 94 ; *Goss* v. *Gibson*, 8 Humph. 197. "There is some reason," says Mr. Hare, after citing these cases, in his note to 1 Sm. L. C. 1250 (7th Am. ed.), "to doubt the propriety of the conclusion, both as it regards co-sureties and ordi-- nary co-contractors, because the purpose of the bankrupt act, obviously, was to discharge the debtor whenever there is no insuperable obstacle to the valuation of the demand of the creditor, which can hardly exist in any case where the liability in question is founded upon an obligation for the payment of a sum certain, or susceptible of being reduced to a certainty by computation. In every such instance the principal obligation is susceptible of proof, and affords a ready means of setting apart the share or proportion of the bankrupt's estate for indemnity of a joint obligor which he would have been entitled to if he had actually paid the debt. It was accordingly held, in *Dear* v. *Speakman*, 7 Blackf. 317 ; *Clark* v. *Porter*, 25 Penn. 141 ; and *Frentiss* v. *Markle*, 2 Iowa, 553, that the contingent nature of the claim of one contractor against another, for contribution before payment, will not prevent it from being discharged by a certificate in bankruptcy, because the contingency does not preclude liquidation on proof."

The reason given for the decisions cited is that the liability between co-sureties does not exist as a matter of contract,

but arises from a principle of equity growing out of the relation of the parties. It is hence inferred that the equity comes into play only upon the payment by one surety of more than his proportion of the common burden, and that the contingency of such a claim cannot be estimated. But this is precisely the ground upon which the claim of a surety against his principal was sought to be taken out of the statute. Chief Baron Eyre does say, in the leading case of *Dering* v. *Earl of Winchelsea*, 1 Cox, 318, "that contribution is bottomed and fixed on general principles of justice, and does not spring from contract; though (he adds) contract may qualify it." And it is no doubt true that the mutual liability grows out of the relation of the parties, independent of positive stipulations on the subject. But, as was said by Lord Eldon, in *Craythorne* v. *Swinburne*, 14 Ves. 169, "after that principle of equity has been universally acknowledged then persons, acting under circumstances to which it applies, *may properly be said to act under the head of contract implied from the universality of that principle.*" Whether we derive the principle from the implied contract, or the implied contract from the principle, there is substantially a contract by implication of law from the relation created by the execution of the instrument or instruments as sureties. The relation and the rights deduced therefrom originate with the execution of the instruments of suretyship, and the right to contribution arises, not merely on the payment of the money, but whenever the failure of the principal renders contribution necessary to preserve that equality of burden which the principle or implied contract demands. *Dering* v. *Earl of Winchelsea* was itself a case where the bill was filed in advance of payment. And the same point had been ruled long before, in *Morgan* v. *Seymour*, 1 Ch. R. 120, and in Toth. 41. This was the rule of the civil law, from which the principle itself was derived, as we learn from Chancellor Kent, in *Campbell* v. *Macomb*, 4 Johns. Ch. 538. It is universally recognized. *McKenna* v. *George*, 2 Rich. Eq. 15; White & Tudor L. C.

in Eq., notes to *Dering* v. *Earl of Winchelsea*. The same rule prevails between the surety and his principal, the claim of the former to indemnity being also founded, not upon contract, but upon "general principles of justice." *Ranelaugh* v. *Hayes*, 1 Vern. 189 ; *Taylor* v. *Heriott*, 4 Des. 227 ; *Henry* v. *Compton*, 2 Head, 549. The rule, in both classes of cases, grows out of the right of the surety to be subrogated to the rights of the creditor, so far as it may be necessary for his protection. In principle there is not the least distinction, under the bankrupt law of 1867, between the right of a surety as against his principal and the right of a surety as against his co-surety. And, if the claim of one is barred by the discharge in bankruptcy, as has been settled by the highest authority, the claim of the other must be equally barred under like circumstances. A co-surety, it has been decided, when sued for contribution, may rely upon any defence which would have been good against the creditor. *Lowndes* v. *Pinckney*, 1 Rich. Eq. 155. And an equitable demand may be proved, although it cannot be the foundation of the commission as a petitioning creditor's debt. *Younge, ex parte*, 3 V. & B. 39 ; *Sigsby* v. *Willis*, 3 Ben. 371.

The bankruptcy act of 1867 expressly makes provable " all existing debts," although contingent and payable at a future day, and all obligations of the bankrupt as " surety " upon any bond, specialty, or contract, whether the liability be absolute or contingent, provided the obligation has given rise to an actual liability, and the extent of the liability is capable of being ascertained. *United States* v. *Throckmorton*, 8 B. R. 309 ; *Riggin* v. *Magwire*, 15 Wall. 549. And the contingency, as we have seen, is as clearly predicable of a liability to pay as of actual payment. The statute has changed the old rule, which certainly prevailed before the bankrupt act of 1841. *Roosevelt* v. *Mark*, 6 Johns. Ch. 286, and cases cited. And I am inclined to think the old rule, based upon the words of the earlier statutes of bankruptcy, was allowed too much weight in giving reasons for

the decisions under the act of 1841. The decisions themselves are, perhaps, correct upon the particular facts. Certainly this was true of *Goss* v. *Gibson*, 8 Humph. 197, decided by our supreme court. There, although there was a breach of the official bond before the proceedings in bankruptcy, yet it does not appear that the fact was known until afterwards. A bond conditioned for the faithful performance of the duty of a public officer is not, prior to its breach, a debt against the surety, and provable as such. *Loring* v. *Kendall*, 67 Mass. 305 ; *Turner* v. *Esselman*, 15 Ala. 690. Nor afterwards, it may safely be said, if the breach was unknown, or not adjudged, or in the course of being adjudged. *Ellis* v. *Ham*, 28 Me. 385. For, until suit brought, or demand made, or, at any rate, until evidence of breach, *non constat* that there will be any debt against the surety. But if, as in the case before us, the breach is judicially declared, the debt is clear, and the amount susceptible of being ascertained. *Woodard* v. *Herbert*, 24 Me. 358. It falls within both the letter and spirit of the act of 1867, the language of which is broader than that of any of its predecessors.

The motion must, therefore, be disallowed.