Moses Woodard *versus* Henry W. Herbert *&* *al.*

There is a distinction between a contingent demand, and a contingency whether there will ever be a demand. The former is a demand which might have been proved under the late bankrupt law of the United States, but the latter is not.

The contingent or uncertain demands provided for in the bankrupt act, are those contingent demands, which were in existence as such and in such a condition, that their value might be estimated at the time when the party was decreed to be a bankrupt.

A debtor was arrested on mesne process and gave a bond in common form to procure his release from arrest; the surety in the bond then filed his petition and was decreed to be a bankrupt; next judgment was rendered in the action and the bond became forfeited by the neglect of the principal to perform the condition thereof; and afterwards the bankrupt received his certificate of discharge; such certificate furnishes no defence to a suit upon the bond.

Debt on a bond, dated Nov. 2, 1841, given by Herbert as principal and French as surety, to procure the release of Herbert from arrest upon a writ in favor of the plaintiff against him.

All the facts appearing in the agreed statement of the parties will be found in the opinion of the Court, and therefore need not be here again stated.

Written arguments were furnished on May 2, 1845, by

*E. G. Rawson*, for the plaintiff: and by

*G. B. Moody*, for French.

Among the grounds of argument in support of the action were these.

The certificate of discharge relieves the debtor only from debts which "are proveable" under the bankrupt act. But this is not a debt susceptible of being proved under the act. In general the proceedings in bankruptcy have relation to the decree of bankruptcy, and not to the petition. *Downer* v. *Brackett*, in re Spear, Law Reporter, 392. At the time of the decree, there was no debt against French, either certain or contingent, which could be proved as a claim in bankruptcy, or affected by the certificate of discharge. There could be no such claim until judgment was rendered against Herbert,

and he had neglected to notify and disclose; which was long after the decree of bankruptcy.

This demand did not, at the time of the decree of bankruptcy, come within the demands permitted to be proved under the fifth section of the bankrupt act. It could not have been estimated at any value, because the law had then fixed no liability upon him. 1 Smith's Leading Cases, 559; Ld. Raym. 1544. It was not the claim of a surety, indorser or bail, seeking to protect himself partially against the bankruptcy of his principal. The plaintiff's claim was then solely against Herbert and he had none, whatever, against French.

For the *defendant*, French, it was said, among other arguments, that the bankrupt act provided, that the certificate should be " deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt as are proveable under this act." The only question then is, whether this claim against French was proveable under the act. Let the act answer. It is provided in section fifth, that " all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, *sureties*, indorsers, *bail*, or *other persons* having *uncertain and contingent demands* against such bankrupt, shall be permitted to come in and prove such debts or claims under this act."

Now if the debt in this case could not be considered as certain for the penalty, truly no ingenuity could construe the condition of the bond as providing for any thing except an *uncertain or contingent* demand. If it were not a certain, it must have been an uncertain demand; if not an absolute, a contingent one; and if either, provided for.

There is as little value to a bottomry or respondentia bond, to a policy of insurance, to the claim of a surety, indorser, or bail, while it remains contingent, whether the ship will arrive in port, whether the goods will be saved, whether the house will stand or burn down, whether the principal will pay, whether the bail will be called upon; as in this case, whether the principal debtor would disclose within fifteen days. The

objection of no value, would apply with equal force to all the other cases referred to in the bankrupt act, as to this case.

The opinion of the Court was drawn up by

SHEPLEY J. — It appears from the agreed statement, that the defendant, Herbert, was arrested on mesne process; and that he, with the defendant, French, as his surety, on November 22, 1841, made the bond, on which this suit was brought, to be liberated from that arrest; that the defendant, French, filed his petition in bankruptcy on February 25, 1842, and was declared to be a bankrupt by a decree of the District Court of the United States on the fifth day of April following. He obtained his certificate of discharge on January 30, 1844. The plaintiff did not recover judgment against Herbert in the original suit until the month of January, 1843. Herbert failed to give notice of his intention to disclose according to the provisions of the statute; and his bond was forfeited.

This suit was commenced on May 6, 1843, and the question presented, is, whether it can be maintained against French.

The fifth section of the act to establish an uniform system of bankruptcy, provided, that "all creditors, whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurances, sureties, indorsers, bail, and other persons having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts or claims under this act, and shall have a right, when their debts and claims become absolute, to have the same allowed them." This clause was probably designed to embrace such debts or claims, as the statute, 6 Geo. 4, c. 16, § 51, 53, 56, had authorized to be proved under an English commission. The fifty-sixth section of that act provided, "that if any bankrupt shall, before the issuing of the commission, have contracted any debt payable upon a contingency, which shall not have happened before the issuing of such commission, the person, with whom such debt has been contracted, may, if he think fit, apply to the commissioners to set a value upon such debt, and the com-

missioners are hereby required to ascertain the value thereof, and to admit such person to prove the amount so ascertained, and to receive dividends thereon."

It has been decided, that by the words "any debt payable upon a contingency," it was intended to include actual contingent debts only; and not a mere personal obligation imposing no debt or duty, which can be estimated and valued. *Ex parte Lancaster Canal Company,* 1 Mont. R. 44; *Lyde* v. *Mynn,* 1 Coop. Sel. Ca. 123. In the latter case, the bankrupt had covenanted to charge an annuity upon any property, which might come to him by his wife's death. He became a bankrupt and obtained his certificate. After that, his wife died and left him an annuity. The decision was, that his certificate could not be pleaded in bar to the covenant. Lord Brougham said, "it is impossible to treat this as a contingent debt; it is in truth no debt at all; it is a mere personal obligation to do a certain thing in a most uncertain event." He inquired how it was possible to ascertain the value of it, and remarked, "it is plainly not at all like a debt payable upon a contingency, which forms the subject of that section."

In the act of Congress the word demand is used instead of the word debt. But apparently without any design to enlarge the class of such contingent claims, for the word debt is used as a synonyme in the same clause, when speaking of the right to prove "such debts or claims under this act." The same rule of construction would seem therefore to be applicable to the act of Congress. Had the plaintiff any actual demand of a contingent character against French at the time, when he was decreed to be a bankrupt? The bond was made according to the provisions of the statute, c. 148, § 17, conditioned, that the principal should, within fifteen days after the last day of the term of the Court, at which judgment should be rendered, notify the creditor for the purpose of disclosure and examination. The plaintiff had not then recovered judgment against the principal. It was uncertain, whether he would be able to recover any judgment. And if he did, it was entirely uncertain, whether the principal would not notify him, and

make a disclosure, and thus perform the condition of the bond. It was therefore doubly contingent, whether there ever would be any claim or demand against French upon that bond. And even after a forfeiture the bond secured nothing but the un-liquidated and uncertain damages, which the plaintiff could prove, that he had sustained by a breach of it. *Burbank* v. *Berry*, 22 Maine R. 483. It is necessary to distinguish be-tween a contingent demand, and a contingency, whether there ever will be a demand. This distinction may be illustrated by the case of a bond made to liberate a poor debtor from arrest on execution. In such case the existence and amount of the debt has been ascertained by a judgment. The surety on the bond obliges himself to pay it, if the principal does not, or does not surrender himself to the prison keeper, or does not procure his discharge by taking the poor debtor's oath. The obligation is to pay a debt or demand upon these contingencies. The debt is a contingent debt, and can be proved against the bankrupt. Not so in the case of a bond made to release from arrest on mesne process. There is no obligation to pay the debt in any event, if one should be finally established. It only obliges the surety to cause the principal to do a personal act, and in case of failure, to make compensation in damages, wholly unliquidated and incapable of estimation before the effect produced by the failure of performance of the personal act can be perceived. It would seem to have been impossible to fix any value upon such a personal obligation. Upon what principles could a Court direct a valuation of the chances, that the plaintiff would recover judgment, and that the defendant in that suit would neglect to notify and disclose, as the statute required? It could not have been the intention, that the whole amount of a possible liability should be the amount to be proved, and to be liquidated, when the debt or claim should become absolute, for nothing could then be received upon the claim, if it did not become absolute, before the business was closed. The clause in the act providing, that they shall have a right, when · their claims become absolute, to have the same allowed them, was designed to have nearly the same effect, as

a similar clause in the act of 6 Geo. 4, c. 16, which provides, that if the value of the contingent debt be not ascertained, before it becomes absolue, then the party shall be entitled to prove it as an absolute claim. But all these proceedings, whether this be the correct construction or not, relate to contingent debts or demands, and not to such obligations, as will not authorize a party to them to claim the performance of any thing by virtue of them except upon the happening of some future and uncertain event.

The cases of *Ex parte Barker*, 9 Ves. 110, and of *Taylor* v. *Young*, 3 B. & A. 521, although they did not arise under the statute of 6 Geo. 4, c. 16, show, that the penal sum of a bond, conditioned to pay or do an act upon the happening of an uncertain event, cannot alone be considered such a contingent debt or demand, as is contemplated in the bankrupt acts.

The contingent or uncertain demands, provided for in the act of Congress, are those contingent demands, which were in existence as such, and in such a condition, that their value could be estimated at the time, when the party was decreed to be a bankrupt.

*A default is to be entered.*