GEORGE HEYWOOD v. BENJAMIN F. SHREVE AND SARAH M., HIS WIFE.

1. If the contract of a married woman be such as a married woman is by law incapable of entering into, her warrant of attorney to enter judgment upon it is a nullity, and judgment entered thereon will be vacated.
2. But if the contract be one that a married woman is able to make, and on which she may be sued at law by force of the Married Woman's act, she may bind herself by a warrant of attorney for the confession of a judgment on such a contract, and the judgment entered in pursuance thereof will be good.
3. Judgment entered for the penalty on a bond conditioned for the payment of an annuity during the life of the annuitant—the obligor subsequently became bankrupt, and was discharged in bankruptcy. *Held,* that the judgment was provable in bankruptcy with respect to all payments of the annuity to become due after the adjudication in bankruptcy, on a valuation thereof, as a contingent liability contracted by the bankrupt within the meaning of section 5068 of the United States Bankrupt act of 1867, and that the liability of the bankrupt under the judgment was discharged by his discharge in bankruptcy.

On rule to show cause.

Argued at November Term, 1881, before Justices DEPUE, VAN SYCKEL and PARKER.

For the plaintiff, *Frederick Voorhees.*

For the defendants, *Walter A. Barrows.*

The opinion of the court was delivered by

DEPUE, J.   Judgment was entered in favor of Heywood against Shreve and wife on the 25th of August, 1874, in pursuance of a bond and warrant of attorney. bearing date March 28th, 1866, in the penal sum of $3000.

The condition of the bond to which the warrant of attorney was annexed is for the payment by the said Benjamin F. Shreve and Sarah M., his wife, to the plaintiff of $500 in each and every year during the plaintiff's lifetime, in quarterly payments, in advance.

Judgment was entered for the penalty of the bond.   Execution was issued immediately for the sum due and unpaid at that time, under the condition of the bond, and the amount thereof was collected by the sheriff.   Payments were subsequently made which satisfied all the payments which became due up to the 28th of June, 1878.

Heywood, the obligee named in the bond, is still living.

A rule to show cause was obtained by Mrs. Shreve to have the judgment vacated as to her.

Mrs. Shreve was a married woman when she executed and delivered the bond and warrant of attorney.   She contends that the bond and warrant of attorney were void as to herself, because of her coverture, and on this ground seeks to have the judgment vacated.

In *Salkeld* 117, 399, it was adjudged that if a *feme sole* give a warrant of attorney to confess judgment, and marry before judgment is entered, the warrant is revoked by the marriage.   But such was not the settled doctrine of the English courts.   In *Shower* 91, it was held that upon such a warrant judgment might be entered against husband and wife by leave of the court.   *Marder* v. *Lee*, 3 *Burr.* 1469, is to the same effect, as are also *Hartford* v. *Mattingly*, 2 *Chitty* 117 ; *Metcalfe* v. *Boote*, 6 *D. & R.* 46, and *Staples* v. *Purser*, 3 *Moo. & S.* 800.

The warrant of attorney of a *feme covert* to confess judgment was void at common law, for the reason that coverture incapacitated her from making a binding contract.   But it is

by no means clear that the English courts would deny effect to the warrant of attorney of a married woman for the confession of judgment against her in instances where she had the capacity to make the contract the warrant of attorney was designed to enforce, and was capable of being sued in a court of law. In Read v. Jewson, cited by Buller, J., (*Caudell* v. *Shaw*, 4 *T. R.* 362,) judgment was entered against a married woman who was a *sole* trader by the custom of London, in virtue of a bond and warrant of attorney given by her for money advanced to her touching her craft. The warrant was held to be a nullity on the special grounds that the custom of London applied only to simple contract debts, and that under the custom a *feme covert* could not give a bond, and also that by the custom the wife could be sued alone, only by action brought in the court of the city of London.

Considering the reasons on which the common law practice was founded, I think the rule of practice which debarred a *feme covert* from making a warrant of attorney to confess a judgment is inapplicable to the condition of married women under our statutes. *Cessante ratione legis, cessat ipsa lex.*

By several acts of the legislature, married women in this state are authorized to acquire and hold property as if *femes sole*, and are authorized to make certain contracts which are binding upon them, and on which they are liable to be sued at law. In none of the statutes making married women liable to suits at law is there any prescription of, or restriction on, the form of action or method of procedure, except that by the act of 1862, (*Nix. Dig.* 548,) the husband was required to be joined with the wife as a defendant, and by the act of 1874 (*Rev., p.* 637) suit was to be brought against her in her own name, apart from her husband.

If the contract of the married woman be such as a married woman is still incapacitated from entering into, her warrant of attorney to enter judgment upon it is a nullity, because the obligation to which the warrant of attorney is annexed is invalid, and judgment entered in pursuance of it will be vacated. *Swing* v. *Woodruff*, 12 *Vroom* 469. But if

the contract be one that the married woman is enabled to make, and on which she may be sued at law, I think a different result must be reached. With respect to such contracts, any action, suit or proceeding which is adapted for the enforcement of the obligation is within the reason and spirit of the statutes which confer the capacity to contract and impose liability to actions at law thereon. The obligation being valid, the warrant of attorney is simply a part of the procedure to enforce it—as much so as a suit by summons or a *cognovit*. *Actio nihil aliud est quam jus persequendi in judicio quod sibi debetur*. *Bouvier Law Dic., "Action."* In *First Nat. Bank* v. *Garlinghouse*, 53 *Barb.* 615, the Supreme Court of New York held that an act which empowered married women to make certain contracts, and authorized suits against them on such obligations, authorized a confession of a judgment by a married woman upon such a contract, on the ground that confession of judgment is one of the ways and processes by which a person is sued, and the right to sue and be sued implies the right to use and be subjected to all the processes by which the judgments of courts are obtained.

The bond and warrant and attorney were made March 28th, 1866, while the act of 1862 (*Nix. Dig.* 548) was in force. The consideration for which they were given was the consideration money for the conveyance of lands to Mrs. Shreve by two several deeds of conveyance made directly to her, and it is so recited in the condition of the bond. The consideration being received by the wife for her benefit, the contract was one she was able to make, and on which she was liable to be sued conjointly with her husband by force of the statute, (*Eckert* v. *Reuter*, 4 *Vroom* 266 ; *Van Kirk* v. *Skillman*, 5 *Id.* 109 ; *Perkins* v. *Elliott*, 8 *C. E. Green* 526,) and the judgment upon it was regular.

Execution was issued on the judgment against both husband and wife on the 5th of March, 1881. The husband obtained a rule to show cause why the execution should not be set aside, or stayed, so far as concerned his property. His ap-

plication is based upon a discharge in bankruptcy on the 20th of March, 1877, under the bankrupt act of March 2d, 1867.

The judgment was entered for the penalty of the bond as security for subsequent breaches as they might occur. For the purposes of the bankrupt act the bond was not merged in the judgment, and the question whether proof with respect to the plaintiff's present demand might have been made in the bankruptcy proceedings is determinable by reference to the condition of the bond. *In re Pennell,* 5 *Jur.* 899.

The bond is purely a bond for the payment of an annuity. The several annual payments maturing before the discharge in bankruptcy have all been paid.

The single question presented in this part of the case is whether the discharge in bankruptcy extinguished the bankrupt's liability on the bond, and relieved him from the obligation to pay the moneys which might accrue and become payable thereunder after the discharge.

Proceedings in bankruptcy are the creatures of statutory law. No debt or demand can be proved against the bankrupt's estate, unless it is included among those which the statute makes provable. Nor does the certificate of discharge relieve the bankrupt from any debt, claim, liability or demand, unless it be such as, by the statute, might have been proved against his estate. The proposition for consideration is whether, by the bankrupt act of 1867, the plaintiff was at liberty to make proof against the bankrupt's estate with respect to the sums which might become due on his bond, or, what is the same thing, on his judgment, after the commencement of the bankruptcy proceedings.

I find no authority directly upon the point stated for decision.

By section 54 of the Bankruptcy act of 6 *Geo. IV.,* c. 16, annuity creditors were permitted to prove for their annuities whether there were arrears or not, and all liability for the same was discharged by the certificate. Annuitants were also specially allowed to come in and prove for the present value of their annuities by the fifth section of the United States Bankrupt act of 1841.

Provision was also made by section 56 of 6 *Geo. IV.* for proof of debts payable on a contingency happening after the issuing of the *fiat* in bankruptcy. This section was re-enacted as section 177 of 12 and 13 *Vict., c.* 106. The latter statute contained also an additional provision, as section 178, for the proof of a liability to pay money on a contingency which had not happened. The United States Bankrupt act of 1841 permitted persons having uncertain and contingent demands against the bankrupt to prove their claims for the same against his estate. These several sections authorized the court to ascertain or fix the sum which should be allowed as a satisfaction for such demands.

But in the English law special statutory provision for proof of annuities was held not to be necessary to enable proof to be made, except in certain cases, and then only for technical reasons. Section 54 of 6 *Geo. IV., c.* 16, was introduced into the English bankrupt law as section 17 of 49 *Geo. III., c.* 121, and was also re-enacted as section 175 of 12 and 13 *Vict., c.* 106. But before 49 *Geo. III.* the grantee of an annuity was allowed to make proof of the value of the annuity if it was secured by a bond which had been forfeited at law, although all arrears had been paid up before the bankruptcy. *Ex parte Le Compte,* 1 *Atk.* 251 ; *Ex parte Belton, Ib.; Ex parte Cater,* 1 *Bro. Ch.* 268 ; 4 *Evans Stat.* 428, *n.* 11. Previous to that act, if the annuity was secured by a covenant, the arrears only could be proved; if secured by bond and covenant, and there had been no failure, nothing could be proved ; but if a failure had occurred, there was this difference between a bond and a covenant, that under a covenant the arrears only could be proved ; but under a bond forfeited before the bankruptcy, the value of the annuity as well as the arrears could be made the subject of proof. *Ex parte Thistlewood,* 19 *Ves.* 235.

The United States Bankrupt act of 1867 omits all mention of annuities. By section 5067 it provides for proof of debts due and payable at the commencement of the proceedings in bankruptcy ; debts existing then and payable at a future day ;

demands for or on account of goods or chattels wrongfully taken, converted or held; unliquidated damages arising out of any contract or promise, or on account of any goods or chattels wrongfully taken, converted or withheld; and by sections 5069 and 5070 for the liability of drawers, endorsers, sureties, bail or guarantors. Section 5072 provides for proof with respect to the liability of the bankrupt to pay rent or other debts falling due at fixed and stated periods for a proportionate part thereof up to the time of the bankruptcy.

Section 5068 is in these words: "In all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends, if the contingency happens before the order for the final dividend; or he may, at any time, apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained."

If the plaintiff could have made proof of a claim with respect to the annual payments falling due on his bond after the bankruptcy proceedings were commenced, he must have been allowed to do so on the theory that the bankrupt's liability therefor was either a contingent debt or a contingent liability within the last-mentioned section.

The omission of special mention of annuities in the act of 1867 is a circumstance of some weight in putting a construction on the act, but should not determine the construction if we find in it words so comprehensive in import as fairly to embrace claims of that character.

The bankruptcy system in England is the growth of successive acts of parliament—many of them passed to meet special cases or to supply omissions in existing acts which were pointed out by the courts. In the consolidation of the legislation on the subject, these special acts of parliament were either retained or combined with other provisions, with additional clauses designed to perfect the system, until the

English bankrupt law has come to present a most elaborate combination of general and special provisions.

The act of congress of 1867 is not a transcript of any prior law. In some instances it consolidated together the special provisions of prior statutes; in other cases it discarded such provisions altogether and supplied their places by general language, comprehensive enough to embrace a variety of particulars under one general expression. In a statute designed in this spirit, the omission of a special provision found in an earlier act is of little significance if general words be found in it which would include the particulars embraced in the prior legislation.

Of this import is section 5068. The language used is, " in all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for," evincing clearly a purpose to embrace all debts and liabilities such as would be included within the generality of the description, which had not otherwise been provided for. The succeeding paragraph in the same section suggests the only limitation on the generality of these words: the debt or liability must be such as that its present value can be ascertained.

There is a class of cases in which contracts and liabilities within the letter of the bankrupt law have been excluded from proof, on the ground that they were subject to contingencies of the value of which the statute had not provided the means of making an estimate. *Brett* v. *Jackson, L. R.,* 4 *C. P.* 259; *Cary* v. *Dawson, L. R.,* 4 *Q. B.* 568; *Mudge* v. *Rowan, L. R.,* 3 *Exch.* 85; *Hastie's Case, L. R.,* 4 *Ch. App.* 274; *In re Foster,* 9 *C. B.* 422; *Kent* v. *Thomas, L. R.,* 5 *Exch.* 312; *Overseers of St. Martin* v. *Warren,* 1 *B. & Ald.* 491; *Parker* v. *Ince,* 4 *H. & N.* 52; *Marchman* v. *Brookes,* 2 *H. & C.* 908; *Riggin* v. *Maguire,* 15 *Wall.* 549; *Robinson* v. *Pesant,* 53 *N. Y.* 419; *Woodward* v. *Herbert,* 24 *Me.* 358; *Loring* v. *Kendall,* 1 *Gray* 305; *French* v. *Morse,* 2 *Id.* 111. Illustrations of this class of cases are actions on a covenant for title when the breach is the inchoate

right of dower of a wife whose husband is still living ; or on an official bond when there has been no breach before the bankruptcy proceedings. Such obligations have been held not to be provable against the bankrupt's estate, and not discharged by his certificate, for the reason that it was uncertain whether any breach would ever occur, and there was no method of estimating the value of the contingency on which they depended. *Riggin* v. *Magwire, Loring* v. *Kendall, supra.*

The principle on which cases of this class were decided will explain the English decisions upon section 178 of 12 and 13 *Vict., c.* 106. That section provides for a claim against the bankrupt's estate where he had, before the filing of his petition, contracted a liability to pay money upon a contingency which had not happened before petition filed. In *Warburg* v. *Tucker,* 5 *E. & B.* 384; *S. C. in error, E., B. & E.* 914, and in *Mitcalfe* v. *Hanson, L. R.,* 1 *H. of L. Cas.* 242, it was held that a covenant to pay annual premiums on a life-policy which had been assigned to the covenantee as security for money loaned, was not "a liability to pay money upon a contingency" within the meaning of this section. An examination of these cases will disclose that they were decided on the ground, as was said by Lord Campbell in 5 *E. & B.* 395, " that the machinery provided for admitting a claim and proof under this section is wholly inapplicable to such a demand," and by Lord Chancellor Cranworth, (*L. R.,* 1 *H. of L. Cas.* 250,) that in the statute there was " no power to enable the creditor to make a claim for the aggregate value of all the payments, *i. e.,* to treat his demand substantially as one in the nature of an annuity, or as if there had been only one contingency."

An inspection of this section will show that these decisions were well grounded, in the absence of the means of estimating the value of such contingent liabilities. The difficulty was removed by section 154 of 24 and 25 *Vict., c.* 134, which gave the court power to set a value upon the interest of the promisee in a contract or a promise to pay premiums or any

other sums of money, whether yearly or otherwise, and to admit proof for the amount so ascertained—a clause which Lord Westbury said, in Mitcalfe *v.* Hanson, was added to the act in the course of its preparation, providing for the occurrence of such questions in the future as arose in Warburg *v.* Tucker and Mitcalfe *v.* Hanson.

12 and 13 *Vict.* was passed in 1849; Warburg *v.* Tucker was decided in 1855; 24 and 25 *Vict.* was passed in 1861; Mitcalfe *v.* Hanson was decided in 1866. The draughtsman of the United States Bankrupt act of 1867 had before him these several statutes and decisions; and in framing the act, he provided explicitly for the ascertainment and liquidation of the present value of contingent debts and liabilities, and for proof of the same for the amount so ascertained.

In 1869, the Bankrupt act of 32 and 33 *Vict., c.* 71, was passed. In consequence of the repeal of various statutes on the subject by the Bankruptcy Repeal and Insolvent Court act, (32 and 33 *Vict.* 83,) passed on the same day, the act of 32 and 33 *Vict., c.* 71, comprised the whole statutory law of bankrupty. 5 *Jac. Fish. Dig.* 6563. Section 31 of the latter statute provided for proof of " all debts and liabilities, present or future, certain or contingent," and for an estimation of the value thereof, for which proof should be made. The English courts have held that annuities and annuity bonds, and covenants to pay annuities, were provable as contingent liabilities within the meaning of this section. In *Ex parte Blackmore,* 5 *Ch. Div.* 372, Lord Justice James said : " The intention of the act was to get rid of the difficulties which had arisen in former cases, in which very great hardship had been inflicted, both upon creditors, who were deprived of any share of the bankrupt's assets, and upon the bankrupt, who remained liable to his creditor's claims. I think that section 31 was intended to apply to all cases of this kind, and pre-eminently to the case of an annuity determinable on a contingency." In *Ex parte Bates,* 11 *Ch. Div.* 914, the annuity was payable during the life of the annuitant, and secured by a covenant, and it was held to be provable on a valuation under section 31.

Lord Justice James said that the statute had converted the annuity, for the purpose of proof, into a gross sum immediately payable, and on that sum the creditor was entitled to recover a dividend. Lord Justice Brett said : " It seems to me that the case is covered entirely by the words of the act. The liability to pay the annuity was a liability contingent on the life of the annuitant, i. e., contingent on the happening of a future event; it is within the precise words of section 31."

Indeed, annuities, whether secured by a bond or covenant or in any other manner, cannot be excluded from the designation of contingent liabilities, without disregarding settled rules of construction. The words " contingent" and " liability" are words common in the legal vocabulary, and there they have a fixed legal signification. Contingent legacies, contingent uses or estates, and contingent remainders, are rights and estates which come into enjoyment or possession on the happening of some uncertain event. As a legal term, liability signifies that condition of affairs which gives rise to an obligation to do a particular thing to be enforced by action ; as we say an executor is liable for the debts of his testator, or a principal is liable for the acts of his agent. A contingent liability contracted by a bankrupt, in its legal signification, means an obligation of the bankrupt arising from his contract, the duty to perform which is dependent as to when or whether the obligation shall become absolute, upon the occurrence of an event the happening of which is a matter of some uncertainty.

In the present case, the bond entered into by the bankrupt created a liability, as soon as it was executed, to make payment of the annuity as the quarterly payments thereof fell due. It was a liability contingent only on the continuance of the life of the annuitant. Its value at any particular period of time was capable of being estimated by the method by which the present value of annuities is estimated. I think the bankrupt's liability on his bond was a contingent liability, contracted by the bankrupt within the meaning of section 5068, and that,

with respect to payments which might come due after petition filed, the present value of the liability was ascertainable and provable under that section, and the obligation was therefore discharged by the bankrupt's certificate of discharge.

The rule to show cause, obtained by the wife, is discharged, with costs. The order for a stay of the execution, applied for by the husband, is granted, with costs.